IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLOTTE CARROLL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1604-B-BN |
| | § | |
| PORTFOLIO RECOVERY | § | |
| ASSOCIATES, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Charlotte Carroll filed an amended *pro se* petition in a Dallas County

justice court alleging that Defendant Portfolio Recovery Associates, LLC ("PRA")

violated several federal statutes, and PRA removed the lawsuit to federal court. *See*

Dkt. No. 1.

United States District Judge Jane J. Boyle referred the removed action to the

undersigned United States magistrate judge for pretrial management under 28

U.S.C. § 636(b). *See* Dkt. No. 3.

PRA answered the amended complaint. *See* Dkt. No. 4. The Court denied

Carroll's motion to remand. *See* Dkt. Nos. 15 & 16. And the Court entered the Initial

Scheduling Order [Dkt. No. 17] under the Civil Justice Expense and Delay Reduction

Plan for the Northern District of Texas and Federal Rule of Civil Procedure 16(b).

Consistent with that schedule, PRA moved for summary judgment on Carroll's

claims. *See* Dkt. Nos. 24 & 25. Carroll responded. *See* Dkt. Nos. 27-29. PRA replied.

*See* Dkt. No. 30. Carroll moved for leave to file a surreply. *See* Dkt. No. 31. And the

parties briefed the motion for leave. *See* Dkt. Nos. 32 & 33.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny leave to file a surreply, grant the motion for summary judgment, and enter judgment dismissing this lawsuit with prejudice.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). And "[a] factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*,

140 F.3d at 625.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)); *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 355 (5th Cir. 2019) (A court must "view the evidence and draw all justifiable inferences in favor of the nonmovant. Even so, barebones, conclusory, or otherwise-unsupported assertions won't cut it; the nonmovant 'must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.'" (footnotes omitted)).

So, "when the moving party has carried its burden under Rule 56(c), its

opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual

issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that

there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

In short, this lawsuit is about an almost $1,500 debt that went unpaid and was sold to PRA. That debt was reported as a Capital One account opened by Carroll in 2013 – but Carroll argues that the debt was the result of identity theft.

PRA moves the Court to dismiss as a matter of law Carroll's operative claims, alleged through the amended state court petition filed prior to removal [Dkt. No. 1-3 at 142-46] – that, as to the debt at issue, PRA violated provisions of the Fair Credit Reporting Act ("FCRA"), the Equal Credit Opportunity Act ("ECOA"), the Fair Debt Collections Practices Act ("FDCPA"), and the Texas Debt Collection Act ("TDCA") by refusing to remove a tradeline from Carroll's credit reports, despite receiving proof that the debt was not owed by Carroll but was instead incurred because of identity theft.

In her response, Carroll starts by asserting that PRA, through its motion for summary judgment, "is attempting to shape [her] claims to fit events of 2020, a time [PRA] actually did obey the law, when [PRA is] fully aware that [her] claims are only related to the events of 2018." Dkt. No. 28 at 1. Carroll then sets out an unverified statement of facts limited to events from March to November 2018, in which she

alleges that her attorney "sent a letter to [PRA] disputing the validity of the debt which included ID theft documentation, police reports, and requests for the Defendants Texas Liability Bond." *Id.* at 4. "Instead of [PRA] providing the requested information, on July 4, 2018 [PRA] mailed Ross and Matthew Attorney Sandra Cummings a bill for the Plaintiff and questionnaire inquiring if she was representing the Plaintiff," *id.*, to which Cummings indicated that she did not represent Carroll, *see* Dkt. No. 29 at 2-5.

PRA replies, in part, that Carroll may not amend her claims through the response; that, to the extent that her allegations are limited to events in 2018, the claims are time barred; and that any discovery dispute raised through the response should not now be considered by the Court. *See* Dkt. No. 30.

In support of leave to file a surreply, Carroll contends that "[t]here is so much more to this matter including fraudulent actions taken by the Defendant and [its counsel] to stop the Plaintiff from filing suit years earlier." Dkt. No. 31. And, in her reply to PRA's response, Carroll further contends that she

> never got the opportunity to state all of her claims when she filed suit because the Defendant used the processes of the Court to deceive the Court and quickly removed the case to this Court. Over a 4-year period there is A LOT of evidence and information that needs to be addressed that the Summary Judgment processes are not able to properly capture.
> When the Defendant filed their Motion for Summary Judgment, they purposefully omitted years of evidence and actions taken from their end which delayed the Plaintiffs lawsuit filing in the first place.
> The Defendant has purposefully not submitted pertinent evidence in an effort to deceive this Court and that should not be rewarded by granting the Defendant Summary Judgment.

Dkt. No. 33 at 1 (cleaned up). *But see Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) ("[T]he traditional leniency

- 8 -

afforded to [ ] *pro se* plaintiff[s] does not excuse [them] from [the] burden of opposing summary judgment through the use of competent summary judgment evidence." (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do."))); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("[T]here is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require *pro se* parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make appropriate allowances for *pro se* responses that may be somewhat less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.").

To start, then, in general, "[a] claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). "This rule is rooted in the need to provide adequate notice" and "encompasses new factual theories supporting previously pleaded legal theories." *Ware v. U.S. Bank Nat'l Ass'n*, 131 F. Supp. 3d 573, 578 (N.D. Miss. 2015) (citations omitted).

But, where a litigant is proceeding *pro se*, the United States Court of Appeals for the Fifth Circuit "has held that [district] courts should construe new allegations

and theories in responses to dispositive motions as motions to amend." *Grant v. Amazon.com Servs. LLC*, No. 3:22-cv-439-S-BH, 2023 WL 6278912, at *5 (N.D. Tex. Sept. 1, 2023) (citing *Debowale v. U.S. Inc.*, 62 F.3d 395, 1995 WL 450199, at *1 (5th Cir. 1995) (per curiam) (precedential under 5TH CIR. R. 47.5.3 as an unpublished opinion issued prior to Jan. 1, 1996)), *rec. accepted*, 2023 WL 6276735 (N.D. Tex. Sept. 26, 2023).

And "[t]his is particularly true where" the *pro se* plaintiff "has not yet made any amendments to [the] complaint." *Id.* (quoting *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010) (per curiam)); *see also Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021) (observing that these considerations are "normally reserved for pro se litigants" (citations omitted)).

Here, the absence of facts in the operative complaint removed from state court made that pleading susceptible to a plausibility challenge under either Federal Rule of Civil Procedure 12(b)(6) or 12(c). But no such challenge was made.

And the Court previously denied Carroll leave to amend her allegations because she failed to show good cause under Federal Rule of Civil Procedure 16(b)(4). *See Carroll v. Portfolio Recovery Assocs., LLC*, No. 3:22-cv-1604-B-BN, 2023 WL 6219395 (N.D. Tex. Sept. 5, 2023), *rec. accepted*, 2023 WL 6218286 (N.D. Tex. Sept. 25, 2023).

But, out of an abundance of caution – and with some hesitation that doing so may allow an unacceptable end-run around Rule 16(b)(4)'s good cause requirement – the undersigned will construe the summary judgment response as amending Carroll's

factual allegations.

Even after doing so, the summary judgment evidence (documenting PRA's interactions with Carroll going back to 2018) supports granting PRA summary judgment in its favor as to all claims alleged, for the reasons explained in detail below.

As to Carroll's request for leave to file a surreply, "[b]ecause the rules do not provide for surreplies as a matter of right, the district court only accepts such filings 'in exceptional or extraordinary circumstances.'" *Gezu v. Charter Commc'ns*, 17 F.4th 547, 556 (5th Cir. 2021) (quoting *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)).

And, while, "[o]rdinarily, sur-replies are 'heavily disfavored,' and the decision to allow a sur-reply lies within the district court's discretion," "when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (quoting *Butler v. S. Porter*, 999 F.3d 287, 297 (5th Cir. 2021)).

Here, PRA arguably raised limitations for the first time as a basis to dismiss some of Carroll's claims once she clearly alleged that the events in question occurred in 2018. But the Court need not consider that argument to conclude (for the reasons explained below) that Carroll's claims, even as amended through the summary judgment response, do not survive the arguments advanced in the summary judgment motion.

So, because the undersigned "decline[s] to rely on the new arguments" as to limitations made on reply, *id.*, the Court should deny leave to file a surreply.

As to any discovery dispute raised by Carroll in response to the summary judgment motion – and, again, affording Carroll a substantial amount of deference as a *pro se* litigant – Carroll's response has not triggered Federal Rule of Civil Procedure 56(d).

First, as the Court ordered when it set deadlines for summary judgment briefing, "[a] motion for continuance made under Federal Rule of Civil Procedure 56(d) must be filed separately and may not be included in the response to the motion for summary judgment, brief in support thereof, or any other document." Dkt. No. 26 at 2-3. This Carroll did not do. And that's reason enough to end a Rule 56(d) analysis.

But Carroll also fails to meet the burdens imposed by the rule.

Rule 56(d) provides that the Court may defer a motion for summary judgment or allow time for a nonmovant to obtain affidavits or declarations or to take discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," FED. R. CIV. P. 56(d), and is "designed to safeguard against a premature or improvident grant of summary judgment," *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990); *see also Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022) ("Summary judgment is appropriate only where 'the plaintiff has had a full opportunity to conduct discovery.' And Rule 56(d) permits 'further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" (citations

omitted)).

"To win relief, the Rule 56(d) movant must make two showings. She first must show (A) that 'additional discovery will create a genuine issue of material fact.' Then she must show (B) that she 'diligently pursued discovery.'" *Bailey*, 35 F.4th at 401 (quoting *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017)).

As to the first requirement,

[i]t's not enough to "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." Instead, [the movant] "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."

*January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023) (citations omitted).

Carroll fails to make a showing to support either of these requirements. And any Rule 56(d) motion is also defective because it is not supported by an affidavit or declaration. *See, e.g.*, *Whitener v. Pliva, Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015) ("To succeed on a Rule 56(d) motion, ... the party requesting discovery must provide an affidavit or declaration in support of the request that 'state[s] with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials w[ill] assist him in opposing summary judgment.'" (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993))).

Turning to the substance of the claims, starting with the FCRA, Carroll alleges that PRA violated 15 U.S.C. §§ 1681i and 1681s-2(b). *See* Dkt. No. 1-3 at 144.

First, "[S]ection 1681i only imposes duties on [consumer reporting agencies ("CRAs")]." *Bacharach v. SunTrust Mortg., Inc.*, Civ. A. No. 14-962, 2015 WL

1897653, at *3 (E.D. La. Apr. 27, 2015). And there is no evidence that PRA is a CRA, and, so, this claim fails as a matter of law. *See, e.g.*, *Childs v. Resident Collect, Inc.*, No. 3:15-cv-403-L, 2017 WL 3980621, at *6-*7 (N.D. Tex. Sept. 11, 2017) (citing 15 U.S.C. § 1681a(f) (the provision of the FCRA that defines CRAs)).

As to the second FCRA violation,

"[o]nce a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the disputed item, correct any inaccuracy, and notify the agency of the results of its investigation. 15 U.S.C.A. § 1681s-2(b). To recover against a furnisher for violations of § 1681s-2(b), a plaintiff must show that: (1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation."

*Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014) (citations and footnote omitted).

Assuming that Carroll notified a CRA of disputed information and that the CRA then notified PRA – as PRA affirms that it received disputes from Carroll via various CRAs through Automated Credit Dispute Verifications ("ACDVs"), *see, e.g.*, Dkt. No. 25 at 6; Dkt. 25-1 at 5-6 – the investigation required must be reasonable considering the information provided by the CRA(s). *See, e.g.*, *Block v. Real Time Resolutions, Inc.*, No. 3:20-CV-01592, 2021 WL 2559260, at *10 (W.D. La. June 8, 2021) ("[I]t is manifest that the scope of the furnisher's duty to conduct a reasonable investigation is bounded by the nature of the consumer's challenge to the reported debt that the furnisher receives from the CRA." (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) ("[T]he central inquiry when assessing

a consumer's claim under § 1681s-2(b) is whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." (cleaned up)))), *rec. adopted*, 2021 WL 2554919 (W.D. La. June 22, 2021).

The extent of the communication between Carroll and PRA and the scope of the investigation that PRA undertook upon its receipt of ACDVs is set out through an affidavit by Meryl Dreano, an Authorized Representative and custodian of record of PRA:

> I have reviewed the records PRA maintains concerning Plaintiff Charlotte Carroll ("Plaintiff").
> Attached hereto as the following documents maintained by PRA related to Plaintiff:
> Exhibit B: Account Notes
> Exhibit C: Load Data
> Exhibit D: Email from Plaintiff
> Exhibit E: BBB Complaint
> Exhibit F: ACDVs
> Exhibit G: Capital One Documents
> Plaintiff opened a Capital One account on June 10, 2013. Exhibit C.
> Plaintiff incurred a balance of $1,475.75 on the account, which went unpaid. *Id.*
> PRA acquired the debt on or around February 15, 2018. Exhibit B; Exhibit G.
> On or about February 28, 2018, PRA sent the initial notice to Plaintiff as required by section 1692g.
> PRA spoke to Plaintiff on several occasions. Exhibit B.
> PRA spoke to Plaintiff on March 10,2018, during which Plaintiff stated she would never pay the account and include the account in her bankruptcy filing. *Id.*
> PRA spoke to Plaintiff on March 21, 2018, during which Plaintiff repeated that she was not going to pay on the account and that she was going to include the account in her bankruptcy filing. *Id.*
> PRA spoke to Plaintiff on April 4, 2018, during which she stated the same as previous conversations. *Id.*
> PRA spoke to Plaintiff on August 13, 2018, during which Plaintiff

stated she was not going to pay the account because the merchant charged or allowed a charge she did not approve of. *Id.*

PRA spoke to Plaintiff on November 13, 2018, during which she repeated that she was never going to pay and would contact her attorney if PRA called her again. *Id.*

On February 19, 2019, Plaintiff received a written correspondence from Plaintiff, via email, requesting that PRA cease and desist all communications with Plaintiff via any and all methods of correspondence. Exhibit D.

PRA subsequently marked the account as such and ceased communicating with Plaintiff. Exhibit B.

None of these phone calls or written communication included any claims regarding identity theft or the account being opened fraudulently. *Id.*

On July 10, 2020, PRA received a copy of a complaint submitted by Plaintiff to the Better Business Bureau (the "BBB"). PRA had not communicated with Plaintiff in between the receipt of Plaintiffs February 19, 2019, email and the BBB complaint. Exhibit E.

Plaintiff's BBB complaint stated, in its entirety:

False Reporting

This account was a result of ID theft and needs to be removed from my credit report

*Id.*

This was the first time PRA learned that Plaintiff was alleging the account was a result of identity theft. *Id.*; Exhibit B.

PRA conducted a[n] investigation into this dispute, including a Peer Review, which is a normal part of PRA's practices when responding to regulatory complaints, including CFPB complaints. A peer review involves one employee reviewing the account and all of the associated information and documents, and preparing a response to the complaint. Another employee then undertakes another separate review of the account as well as the proposed response to double check the response for accuracy. This ensures that two separate employees have investigated the account.

PRA timely replied to this dispute. Exhibit E.

PRA also marked the account as disputed for the purposes of credit reporting. Exhibit B.

On September 10, 2020, PRA received the first of two Automated Credit Dispute Verification ("ACDVs") from Plaintiff. Exhibit B; Exhibit F.

The ACDV contained a dispute code of "103: Claims true identity fraud/account fraudulently opened." Exhibit F.

Attached to the ACDV was a police report dated June 12, 2012, which predated the date the account was opened. *Id.*

Also attached was a letter from the IRS dated November 8, 2011, which also predated the date the account was opened. *Id.*

PRA received a second ACDV on October 3, 2020, which contained the same dispute code and same documentation as the previous ACDV. *Id.*

PRA conducted an investigation in the account in response to receipt of both ACDVs. Exhibit B.

PRA's investigation included reviewing all of PRA's documentation on the account, including the documents and information received from Capital One, the original creditor of the debt. These documents show that Plaintiff had made multiple payments on the account.

PRA's investigation also included reviewing the previous conversations that PRA had with Plaintiff, during which Plaintiff never made any mention of identity theft, as well as the documentation included by Plaintiff, including the police report which predated the account being opened.

Based on PRA's investigation of the debt and the totality of information available to PRA – the media associated with the account, previous conversations with PRA, the BBB complaint and response, the ACDVs and including police report and IRS letter, both of which predated the account being opened – PRA concluded that the information is was credit reporting was accurate and that Plaintiff owed the debt in question.

PRA responded with the dispute response code "XC:Completed investigation of FCRA dispute – Consumer disagrees." Exhibit F.

PRA did not have any further communications with Plaintiff. Exhibit B.

PRA continued to report the debt as disputed during any credit reporting.

PRA processes numerous ACDVs in the course of its business and has established procedures for investigating the disputes raised in ACDVs.

Dkt. No. 25-1 at 3-6.

This evidence, which Carroll does not refute, reflects that the review that PRA undertook was reasonable. As PRA persuasively concludes,

[t]he information provided by Plaintiff through the ACDVs was insufficient to show that the account was actually the result of identity theft. The information available to PRA showed that Plaintiff did not start alleging identity theft until years after PRA first spoke to Plaintiff. The statements from Plaintiff show that she was aware of the account

> and the charges made on the account, and Plaintiff offered a reason for not paying the debt on several occasions that had nothing to do with identity theft. Thus, PRA committed a reasonable investigation of the debt, and there are no genuine issues of material fact which warrant denying summary judgment to PRA on Plaintiff's FCRA claims.

Dkt. No. 25 at 12.

The Court should therefore grant summary judgment in PRA's favor as to Carroll's second alleged violation of the FCRA and dismiss her claim under Section 1681s-2(b) with prejudice.

Turning to the FDCPA, Carroll alleges that PRA violated 15 U.S.C. §§ 1692e(8) and 1692(f)(1). *See* Dkt. No. 1-3 at 144.

"Section 1692e(8) prohibits a debt collector from communicating 'to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.'" *Krier v. United Revenue Corp.*, No. 3:19-cv-2954-G, 2020 WL 2065618, at *4 (N.D. Tex. Apr. 28, 2020) (quoting 15 U.S.C. § 1692e(8)). "To state an actionable claim under Section 1692e(8), [a plaintiff] must show that [the debt collector] knew the debt was disputed and, after acquiring this knowledge, communicated [plaintiff's] credit information to third parties without disclosing the dispute." *Douglas v. Select Portfolio Serv., Inc.*, Civ. A. No. H-14-1329, 2014 WL 12599411, at *3. (S.D. Tex. Aug. 13, 2014) (citation omitted).

But, as the unrefuted evidence above reflects, as soon as PRA was notified that the debt was disputed, it reported it as such. And, "[b]ecause [PRA] can only be liable under Section 1692e(8) if it failed to disclose the debt was in dispute, [Carroll] has not stated a claim under this section," *id.*, and, so, the Court should grant summary judgment in PRA's favor as to this claim and dismiss it with prejudice.

Carroll next claims that PRA violated Section 1692(f)(1), which "prohibits a debt collector from collecting any amount that is not expressly authorized by the agreement creating the debt or permitted by law." *McCormick v. 7-11, Inc.*, No. 3:06-cv-127-N, 2008 WL 11424230, at *2 (N.D. Tex. Sept. 29, 2008).

Carroll offers no evidence that PRA attempted to collect more than was allowed for, where her theory is that the debt at issue is invalid because of identity theft and, as set out above, PRA provides unrefuted evidence that it owned the debt, had a right to collect on the debt, and reasonably believed (after an investigation) that Carroll was responsible for the debt. The Court should therefore grant summary judgment in PRA's favor as to this claim and dismiss it with prejudice.

Carroll's final federal cause of action is that PRA violated the ECOA.

> To state a claim for relief under the ECOA, the plaintiffs must plausibly show that they were discriminated against in violation of the statute. More specifically, the complaint must plausibly allege that (1) each plaintiff was an "applicant"; (2) the defendant was a "creditor"; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class.

*Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705-06 (5th Cir. 2017) (citations and footnote omitted).

Focusing just on the third prong of an ECOA claim, Carroll has not plausibly alleged – much less is there evidence to support – that PRA discriminated against her based on a protected class. And, so, PRA is also entitled to summary judgment on this claim, and it should be dismissed with prejudice.

Carroll finally asserts a claim under the Texas Finance Code, alleging that, "[i]n Texas, there is the Texas Finance Code Ann. §§ 392.001 to 392.404 and 396.001

to 393.353 which provides protection against consumers." Dkt. No. 1-3 at 143. This statement alone fails to allege a plausible claim the PRA violated a provision of the Texas Finance Code.

And, although Carroll further alleges that she is "seeking relief under the Texas Finance Code Section 392.403," *id.* at 144, this is just the civil remedies provision, *see McCraig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 472 (5th Cir. 2015) ("Texas Financial Code section 392.403 creates a private right of action for TDCA violations." (footnote omitted)).

And, so, Carroll still has not alleged a specific violation under the statute, much less presented evidence that would prevent denying summary judgment to PRA as to this claim. The Court should therefore grant summary judgment in PRA's favor as to this claim and dismiss it with prejudice.

In sum, the Court should deny Carroll leave to file a surreply and grant summary judgment in PRA's favor and dismiss this lawsuit with prejudice.

## Recommendation

The Court should deny Plaintiff Charlotte Carroll's motion for leave to file a surreply [Dkt. No. 31] and grant Defendant Portfolio Recovery Associates, LLC's motion for summary judgment in its favor as to Carroll's claims [Dkt. No. 24] and dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections

within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 22, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE